ADR

1   RONALD S. LEMIEUX (SB# 120822)     E-Filing
    ronlemieux@paulhastings.com
2   SHANEE Y.W. NELSON (SB# 221310)
    shaneenelson@paulhastings.com
3   KEREN HU (SB# 252725)
    kerenhu@paulhastings.com
4   PAUL, HASTINGS, JANOFSKY & WALKER LLP
    1117 S. California Avenue
5   Palo Alto, CA  94304-1106
    Telephone:  (650) 320-1800
6   Facsimile:  (650) 320-1900

7   Attorneys for Defendant
    ChipMOS Technologies, Inc.
8

ORIGINAL FILED

AUG 1 2 2009

Richard W. Wieking
Clerk, U.S. District Court
Northern District of California
San Jose

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  Freescale Semiconductor, Inc., a     CASE NO.  C09  03689 JF RS
    corporation,
14                                       NOTICE OF REMOVAL OF ACTION
                    Plaintiff,           UNDER 28 U.S.C. § 1441(b) (DIVERSITY)
15
         v.
16
    ChipMOS Technologies, Inc., a
17  corporation,

18                  Defendant.

19

20       TO THE CLERK OF THE ABOVE ENTITLED COURT:

21       PLEASE TAKE NOTICE THAT Defendant ChipMOS Technologies, Inc. hereby

22  removes to this Court the state court action described below.

23       1.      On July 13, 2009 an action was commenced in the Superior Court of the State of

24  California in and for the County of Santa Clara, entitled *Freescale Semiconductor, Inc. v.*

25  *ChipMOS Technologies, Inc.*, Case No. 1-09-CV-147225.  A copy of the complaint is attached

26  hereto as Exhibit "A".

27

28

1        2.      Defendant received a copy of the complaint and summons from said state court

2  after the Plaintiff attempted to serve the Defendant's United States subsidiary, ChipMOS U.S.A.

3  A copy of the summons is attached hereto as Exhibit "B".

4        3.      This case is a civil action of which this Court has original jurisdiction under 28

5  U.S.C. § 1332, and is one which may be removed to this Court by Defendant pursuant to the

6  provisions of 28 U.S.C. § 1441(b) in that it is a civil action between citizens of different states

7  and the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs because

8  Plaintiff alleges that Defendant owes Plaintiff $642,007 in royalties under an Immunity

9  Agreement for certain products allegedly made by the Defendant.

10        4.      Complete diversity of citizenship exists in that: Plaintiff Freescale Semiconductor,

11  Inc. is a corporation incorporated under the laws of the State of Delaware and having its principal

12  place of business in the State of Texas; and Defendant ChipMOS Technologies, Inc. is a

13  Taiwanese corporation with its principal place of business in Hsinchu, Taiwan, Republic of

14  China, and is the only defendant that Plaintiff has purported to serve in the action.

15

16  DATED:  August 12, 2009        Respectfully submitted,

17                            PAUL, HASTINGS, JANOFSKY & WALKER LLP
                              RONALD S. LEMIEUX

18                            SHANÉE Y.W. NELSON
                            KEREN HU

19

20                      By: *Shanée Y.W. Nelson*

21                            Shanée Y.W. Nelson

22                      Attorneys for Defendant

23                      ChipMOS Technologies, Inc.

24

25

26

27

28

# EXHIBIT A

1   Greg L. Lippetz (State Bar No. 154228)
    JONES DAY
2   Silicon Valley Office
    1755 Embarcadero Road
3   Palo Alto, CA 94303
    Telephone:    650-739-3939
4   Facsimile:    650-739-3900
    Email:        glippetz@jonesday.com
5
    Attorneys for Plaintiff
6   Freescale Semiconductor, Inc.

7

8               SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF SANTA CLARA

10

11  Freescale Semiconductor, Inc., a corporation,    CASE NO. 1 0 9 C V 1 4 7 2 2 5

12              Plaintiff,                            COMPLAINT FOR BREACH OF
                                                     CONTRACT
13          v.

14  ChipMOS Technologies Inc., a corporation,

15              Defendant.

16

17          Plaintiff Freescale Semiconductor, Inc. ("Freescale"), for its complaint against Defendant

18  ChipMOS Technologies Inc. ("ChipMOS"), alleges as follows:

19                              **GENERAL BACKGROUND**

20          This is an action brought by Freescale against ChipMOS for breach of an Immunity

21  Agreement.  The parties entered into an Immunity Agreement whereby Freescale would provide

22  ChipMOS immunity from suit under Freescale's patents relating to certain semiconductor

23  technology.  In return, ChipMOS provided Freescale with immunity from suit for ChipMOS'

24  patents relating to certain semiconductor technology.  Under the Immunity Agreement, ChipMOS

25  was obligated to pay Freescale certain royalty payments.  ChipMOS has failed to pay a portion of

26  the royalties due to Freescale under the Immunity Agreement and therefore is liable for breach of

27  the Immunity Agreement.

28

**PARTIES**

1.     Plaintiff Freescale Semiconductor, Inc. is a corporation organized under the laws of Delaware having a principal place of business at 6501 West William Cannon Drive, Austin, Texas 78735

2.     Upon information and belief, ChipMOS Technologies Inc. is a Taiwanese corporation with its principal place of business at No. 1 R&D Rd. 1, Science-Based Industrial Park, Hsinchu, Taiwan, R. O. C.

**JURISDICTION AND VENUE**

3.     This court has general subject matter jurisdiction over the above-captioned litigation.

4.     This court has personal jurisdiction over ChipMOS pursuant to California Code of Civil Procedure, § 410.10.  Upon information and belief, ChipMOS USA, Inc. ("ChipMOS USA") is a wholly-owned subsidiary of ChipMOS with its principal place of business in San Jose, California.  Upon information and belief, ChipMOS does business in California through its wholly owned subsidiary ChipMOS USA.

**VENUE**

5.     Venue is proper in this County because ChipMOS has a presence in, and does substantial business in this County.

**FACTS GIVING RISE TO THE DISPUTE**

**THE IMMUNITY AGREEMENT**

6.     ChipMOS and Motorola, Inc. ("Motorola") entered into an Immunity Agreement effective as of April 1, 1999. The Immunity Agreement is attached hereto as Exhibit A.

7.     ChipMOS and Motorola renewed the Immunity Agreement through an Amendment effective as of January 1, 2003.  The Amendment renewing the Immunity Agreement is attached hereto as Exhibit B.

8.     Motorola assigned the Immunity Agreement to Freescale on September 1, 2005 after Freescale was spun off from Motorola.  Freescale thereby assumed all of Motorola's rights, duties and obligations under the Immunity Agreement.

2

9.    The Immunity Agreement provided both parties with immunity from certain of each others' patents related to certain semiconductor technologies.

10.    Freescale's grant of immunity from suit is set forth in Section 3.1 of the Immunity Agreement, which states:

> MOTOROLA hereby grants to ASSEMBLY HOUSE and its SUBSIDIARIES, for the term of this Agreement, immunity from suit under MOTOROLA PATENTS for making BGA PACKAGES, with or without solder balls or the like, for another and for ASSEMBLY HOUSE internal use. In no event shall the immunity from suit apply to MOTOROLA PATENTS which are infringed by the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs independent of being packaged in BGA PACKAGES.

11.    ChipMOS' grant of immunity from suit is set forth in Section 3.2 of the Immunity Agreement, which states:

> ASSEMBLY HOUSE and its SUBSIDIARIES hereby grant to MOTOROLA and its SUBSIDIARIES, for the term of this Agreement, immunity from suit under ASSEMBLY HOUSE PATENTS for making and/or having made BGA PACKAGES, with or without solder balls or the like, and for the subsequent sale and use thereof. In no event shall the immunity from suit apply to ASSEMBLY HOUSE PATENTS which are infringed by the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs independent of being packaged in BGA PACKAGES.

12.    The Immunity Agreement required ChipMOS to pay Freescale certain royalty payments. The royalty provision is set forth in Section 4 of the amended Immunity Agreement, which states:

> In partial consideration of the rights granted by MOTOROLA under Section 3, for the period beginning on the EFFECTIVE DATE and extending to December 31, [2010], ASSEMBLY HOUSE agrees to pay MOTOROLA a royalty based on the total number of pads on BGA PACKAGEs made by ASSEMBLY HOUSE and its SUBSIDIARIES, and shipped and invoiced to customers of ASSEMBLY HOUSE or its SUBSIDIARIES, excluding those made for MOTOROLA and excluding returns.
>
> The royalty shall be [$0.00011 (eleven one hundred thousandths of a dollar) per pad].

13.    The amended Immunity Agreement further defines BGA PACKAGE in section 1.4, which states:

> BGA PACKAGE means a housing for an INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs in which the INTEGRATED CIRCUIT

3

STRUCTURE or STRUCTUREs are mounted on one side of a substrate of printed circuit board material or the like and are wire bonded to the substrate, plastic overlies the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs, and pads for receiving solder balls or the like and providing electrical contacts to the [INTEGRATED CIRCUIT STRUCTURE or STRUCTURES] are mounted on the substrate on the side opposite to that on which the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs are mounted. Some BGA packages my have some pads which are not electrically connected to the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs.

## INDEPENDENT AUDIT FOR ROYALTIES DUE
## UNDER IMMUNITY AGREEMENT

14.     In November 2005 and in February 2006, pursuant to Section 4.5 of the Immunity Agreement, an independent audit of ChipMOS was conducted to determine the amount of royalties payable to Freescale under the Immunity Agreement. The auditor completed its audit report on March 27, 2006.

15.     According to the audit report, ChipMOS owed significant royalty payments to Freescale. In particular, the auditor determined that ChipMOS owed Freescale $642,007 in royalties for certain products that ChipMOS made, shipped and invoiced to customers during the period of April 1, 1999 to September 30, 2005.

16.     Following the audit, Freescale and ChipMOS engaged in further discussions regarding the outstanding royalty payments. By June 2006, ChipMOS still had not agreed to pay Freescale the outstanding royalties owed under the Immunity Agreement.

## TERMINATION OF IMMUNITY AGREEMENT

17.     Section 5.2 of the Immunity Agreement outlines the procedure for a party to terminate the Immunity Agreement upon breach by the other party. Section 5.2 states:

In the event of any breach of this Agreement by either party hereto (including ASSEMBLY HOUSE's obligation to make payments under Section 4), if such breach is not corrected within forty-five (45) days after written notice describing such breach, this Agreement may be terminated forthwith by further written notice to that effect from the party noticing the breach.

18.     On June 28, 2006, Freescale provided ChipMOS with written notice of ChipMOS' breach of its obligation to make payments under section 4 of the Immunity Agreement. The

4

1   written notice notified ChipMOS of its obligation to correct the breach within 45 days under

2   Section 5.2 of the Immunity Agreement.

3       19.    ChipMOS did not pay Freescale the outstanding royalty payments within 45 days

4   of receiving the written notice.

5       20.    On October 16, 2006, Freescale sent a letter to ChipMOS terminating the

6   Immunity Agreement pursuant to Section 5.2.

7                    **CHIPMOS' CONTINUING OBLIGATIONS TO FREESCALE**
8                        **UNDER THE IMMUNITY AGREEMENT**

9       21.    Under the Immunity Agreement, ChipMOS remains obligated to pay royalties to

10  Freescale after termination.  Section 5.4 of the Immunity Agreement states:

11      In the event of termination of this Agreement by one party pursuant to Section
        5.2, the immunity and rights granted to or for the benefit of that one party hereto
12      and its SUBSIDIARIES under MOTOROLA PATENTS or ASSEMBLY
        HOUSE PATENTS, as the case may be, depending upon who is the party doing
13      the terminating, shall survive such termination and shall extend for the full term
        of this Agreement, but the immunity and rights granted to or for the benefit of the
14      other party shall terminate as of the date termination takes effect.

15

16      22.    The Immunity Agreement also provides for an interest charge for delayed royalty

17  payments under Section 4.4 of the Immunity Agreement, which states:

18      Any payment hereunder which shall be delayed for more than thirty (30) days beyond the
        due date shall be subject to an interest charge of one (1) percent per month on the unpaid
19      balance payable in United States currency until paid.  The foregoing payment of interest
        shall not affect MOTOROLA's right to terminate in accordance with Section 5.
20
                            **FIRST CAUSE OF ACTION**
21                              **(BREACH OF CONTRACT)**

22      23.    Freescale re-alleges and incorporates by reference Paragraphs 1 through 22 as if

23  fully set forth herein.

24      24.    The Immunity Agreement is a valid and enforceable contract.

25      25.    Freescale has at all times performed its obligations under the Immunity

26  Agreement.

27      26.    ChipMOS is obligated to pay royalty payments to Freescale as set forth in Section

28  4 of the Immunity Agreement.

5

27.     ChipMOS has failed to pay certain royalties owed to Freescale under Section 4 of the Immunity Agreement.

28.     ChipMOS' failure to pay royalties to Freescale under Section 4 of the Immunity Agreement constitutes a breach of the Immunity Agreement.

29.     Freescale has suffered injury due to ChipMOS' failure to pay royalties under Section 4 of the Immunity Agreement in an amount greater than $25,000.

## PRAYER FOR RELIEF

Wherefore, Plaintiff Freescale prays judgment against Defendant ChipMOS as follows:

A.     An award of actual and consequential damages;

B.     An award of exemplary damages in accordance with the law;

C.     An award of interest under Section 4.4 of the Immunity Agreement;

D.     An order requiring ChipMOS to continue to pay royalties to Freescale through the original term of the Immunity Agreement;

E.     An award of reasonable attorney's fees and costs of suit herein, to the extent allowed by law; and

F.     Such other and further relief as this Court may deem just and proper.

Dated: July 13, 2009                          JONES DAY


By: _____
         Greg L. Lippetz

Attorney for Plaintiff
FREESCALE SEMICONDUCTOR, INC.

SVI-70553v1

6

COMPLAINT FOR BREACH OF CONTRACT

**EXHIBIT A**

# IMMUNITY AGREEMENT

THIS AGREEMENT is effective as of the _____First_____ day of _____April_____, 1999, by and between MOTOROLA, INC., a Delaware corporation having an office at 3102 North 56th Street, Phoenix, Arizona 85018, (hereinafter called "MOTOROLA"), and CHIPMOS TECHNOLOGIES INC., a corporation of Taiwan, R.O.C. having a principal office at No. 1, R&D Rd. 1, Science-Based Industrial Park, Hsinchu, Taiwan Republic of China, (hereinafter called "ASSEMBLY HOUSE").

WHEREAS, MOTOROLA owns and has, or may have patents issued, and applications for patents pending, in various countries of the world which relate to ball grid array (BGA) PACKAGEs (as hereinafter defined), and

WHEREAS, ASSEMBLY HOUSE owns and has, or may have, rights in various patents issued, and applications for patents pending, in various countries of the world which may relate to BGA PACKAGEs, and

WHEREAS, ASSEMBLY HOUSE and MOTOROLA are engaged in continuing research, development and engineering in regard to BGA PACKAGES and have programs for the patenting of inventions resulting therefrom; and

WHEREAS MOTOROLA is interested in proliferating BGA PACKAGEs as a standard in the semiconductor industry; and

WHEREAS, ASSEMBLY HOUSE is interested in providing the service of making BGA PACKAGEs for semiconductor manufacturers including those who are competitors of MOTOROLA;

NOW THEREFORE, in consideration of the mutual covenants and conditions hereinafter set forth, it is agreed as follows:

## Section 1 - DEFINITIONS

1.1    SUBSIDIARY(IES) means a corporation, company, or other entity more than fifty percent (50%) of whose outstanding shares or securities (representing the right to vote for the election of directors or other managing authority) are, now or hereafter, owned or controlled, directly or indirectly by a party hereto, but such corporation, company, or other entity shall be deemed to be a SUBSIDIARY only so long as such ownership or control exists.

1.2    SEMICONDUCTOR MATERIAL means any material whose conductivity is intermediate to that of metals and insulators at room temperature and whose conductivity, over some temperature range, increases with increases in temperature. Such material shall include but not be limited to refined products, reaction products, reduced products, mixtures and compounds.

.3    INTEGRATED CIRCUIT STRUCTURE means an integral unit consisting primarily of a plurality of active and/or passive circuit elements associated on, or in, a unitary body of SEMICONDUCTOR MATERIAL for performing electrical or electronic functions.

1.4     BGA PACKAGE means a housing for an INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs in which the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs are mounted on one side of a substrate of printed circuit board material or the like and are wire bonded to the substrate, plastic overlies the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs, and pads for receiving solder balls or the like and providing electrical contacts to the integrated circuit device are mounted on the substrate on the side opposite to that on which the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs are mounted. Some BGA packages may have some pads which are not electrically connected to the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs.

1.5     MOTOROLA PATENTS means all classes or types of patents, utility models, design patents and applications for the aforementioned of all countries of the world relating to BGA PACKAGEs and enhancements thereto which, prior to the date of expiration or termination of this Agreement, are:

     (i)     issued, published or filed, and which arises out of inventions made solely by one or more employees of MOTOROLA or a SUBSIDIARY thereof, or

     (ii)    acquired by MOTOROLA or a SUBSIDIARY thereof,

and under which and to the extent to which and subject to the conditions under which MOTOROLA or a SUBSIDIARY thereof may have, as of the EFFECTIVE DATE of this Agreement, or may thereafter during the term of this Agreement acquire, the right to grant licenses or rights of the scope granted herein without the payment of royalties or other consideration to third persons, except for payments to third persons (a) for inventions made by said third persons while engaged by MOTOROLA or a SUBSIDIARY thereof, and (b) as consideration for the acquisition of such patents, utility models, design patents and applications.

.6     ASSEMBLY HOUSE PATENTS means all classes or types of patents, utility models, design patents and applications for the aforementioned of all countries of the world relating to BGA PACKAGEs and enhancements thereto which, prior to the date of expiration or termination of this Agreement, are:

     (i)     issued, published or filed, and which arise out of inventions made solely by one or more employees of ASSEMBLY HOUSE or a SUBSIDIARY thereof, or

     (ii)    acquired by ASSEMBLY HOUSE or a SUBSIDIARY thereof,

and under which and to the extent to which and subject to the conditions under which ASSEMBLY HOUSE or a SUBSIDIARY thereof may have, as of the EFFECTIVE DATE of this Agreement, or may thereafter during the term of this Agreement acquire, the right to grant licenses or rights of the scope granted herein without the payment of royalties or other consideration to third persons, except for payments to third persons (a) for inventions made by said third persons while engaged by ASSEMBLY HOUSE or a SUBSIDIARY thereof and (b) as consideration for the acquisition of such patents, utility models, design patents and applications.

.7     EFFECTIVE DATE means the date of the last signature hereto.

**Section 2 - MUTUAL RELEASES**

2.1     MOTOROLA hereby releases, acquits and forever discharges ASSEMBLY HOUSE and its SUBSIDIARIES for any time prior to the EFFECTIVE DATE, from any and all claims or liability for infringement or alleged infringement of any MOTOROLA PATENTS for which immunity from suit is herein granted by MOTOROLA.

2.2     ASSEMBLY HOUSE and its SUBSIDIARIES hereby releases, acquits and forever discharges MOTOROLA and its SUBSIDIARIES for any time prior to the EFFECTIVE DATE, from any and all claims or liability for infringement or alleged infringement of any ASSEMBLY HOUSE PATENTS for which immunity from suit is herein granted by ASSEMBLY HOUSE to MOTOROLA.

**Section 3 - IMMUNITY FROM SUIT**

3.      MOTOROLA hereby grants to ASSEMBLY HOUSE and its SUBSIDIARIES, for the term of this Agreement, immunity from suit under MOTOROLA PATENTS for making BGA PACKAGES, with or without solder balls or the like, for another and for ASSEMBLY HOUSE internal use. In no event shall the immunity from suit apply to MOTOROLA PATENTS which are infringed by the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs independent of being packaged in BGA PACKAGES.

3.2     ASSEMBLY HOUSE and its SUBSIDIARIES hereby grant to MOTOROLA and its SUBSIDIARIES, for the term of this Agreement, immunity from suit under ASSEMBLY HOUSE PATENTS for making and/or having made BGA PACKAGES, with or without solder balls or the like, and for the subsequent sale and use thereof. In no event shall the immunity from suit apply to ASSEMBLY HOUSE PATENTS which are infringed by the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs independent of being packaged in BGA PACKAGES.

3.3     No licenses under any copyrights or mask work rights of either MOTOROLA or ASSEMBLY HOUSE or a SUBSIDIARY thereof, are granted under this Agreement.

**Section 4 - PAYMENTS**

4.      In partial consideration of the rights granted by MOTOROLA under Section 3, for the period beginning on the EFFECTIVE DATE and extending to December 31, 2002, ASSEMBLY HOUSE agrees to pay MOTOROLA a royalty based on the total number of pads on BGA PACKAGEs made by ASSEMBLY HOUSE and its SUBSIDIARIES, and shipped and invoiced to customers of ASSEMBLY HOUSE or its SUBSIDIARIES, excluding those made for MOTOROLA and excluding returns.

        The royalty shall be $0.0007 (seven ten thousandths of a dollar) per pad until a royalty of $500,000 (five hundred thousand dollars) has been accrued.

        After a royalty of $500,000 (five hundred thousand dollars) has been accrued, the royalty shall be $0.0003 (three ten thousandths of a dollar) per pad.

4.2.   Royalty payments shall be determined by the total number of pads on BGA PACKAGEs subject to the immunity from suit of section 3.1 shipped during a payment period to customers of ASSEMBLY HOUSE or its SUBSIDIARIES excluding those shipped to MOTOROLA and excluding returns.

4.3   Payment periods shall be on a quarterly basis. Within forty-five (45) days after each calendar quarter ending March 31, June 30, September 30, and December 31, ASSEMBLY HOUSE shall pay to MOTOROLA the royalties payable hereunder for the respective calendar quarter ending on such date as determined above.

4.4   Any payment hereunder which shall be delayed for more than thirty (30) days beyond the due date shall be subject to an interest charge of one (1) percent per month on the unpaid balance payable in United States currency until paid. The foregoing payment of interest shall not affect MOTOROLA's right to terminate in accordance with Section 5.

4.5   ASSEMBLY HOUSE shall keep full, clear and accurate records with respect to BGA PACKAGEs. MOTOROLA shall have the right through a mutually agreed upon independent auditor to examine and audit no more than once a year at a mutually agreeable time all such records and such other records and accounts as may under recognized accounting practices contain information bearing upon the amount of royalty payable to MOTOROLA under this Agreement. Prompt adjustment shall be made to compensate for any errors or omissions disclosed by such examination or audit. Neither such right to examine and audit nor the right to receive such adjustment shall be affected by any statement to the contrary appearing on a check or otherwise.

4.6   Within forty-five (45) days after each calendar quarter ending March 31, June 30, September 30, December 31 and continuing thereafter until all royalties payable hereunder shall have been reported and paid, ASSEMBLY HOUSE shall furnish to MOTOROLA a detailed and complete written statement, certified by a responsible officer of ASSEMBLY HOUSE as showing all BGA PACKAGEs which were either manufactured, sold, leased, put into use, or otherwise disposed of during such periods, and the amount payable thereon. If no such BGA PACKAGEs have been manufactured, sold, leased, put into use, or otherwise disposed of, that fact shall be shown on such statement.

4.7   Payments hereunder are to be made to MOTOROLA's New York City account at CITIBANK 38491386, 1 Citicorp Center, 399 Park Avenue, New York, New York 10043. Notice of payments shall be sent by ASSEMBLY HOUSE to MOTOROLA's address in Section 6.9.

## Section 5 - TERM AND TERMINATION AND ASSIGNABILITY

5.1   The term of this Agreement shall be from the EFFECTIVE DATE until December 31, 2002 unless earlier terminated as elsewhere provided in this Agreement.

5.2   In the event of any breach of this Agreement by either party hereto (including ASSEMBLY HOUSE's obligation to make payments under Section 4), if such breach is not corrected within forty-five (45) days after written notice describing such breach, this Agreement may be terminated forthwith by further written notice to that effect from the party noticing the breach.

5.3   Either party hereto shall also have the right to terminate this Agreement forthwith by giving written notice of termination to the other party at any time, upon or after:

> the filing by such other party of a petition in bankruptcy or insolvency; or

> any adjudication that such other party is bankrupt or insolvent; or

> the filing by such other party of any legal action or document seeking reorganization, readjustment or arrangement of its business under any law relating to bankruptcy or insolvency; or

> the appointment of a receiver for all or substantially all of the property of such other party; or

> the making by such other party of any assignment for the benefit of creditors; or

> the institution of any proceedings for the liquidation or winding up of such other party's business or for the termination of its corporate charter.

5.4   In the event of termination of this Agreement by one party pursuant to Section 5.2, the immunity and rights granted to or for the benefit of that one party hereto and its SUBSIDIARIES under MOTOROLA PATENTS or ASSEMBLY HOUSE PATENTS, as the case may be, depending upon who is the party doing the terminating, shall survive such termination and shall extend for the full term of this Agreement, but the immunity and rights granted to or for the benefit of the other party shall terminate as of the date termination takes effect.

5.5   At such time as is mutually agreeable, at the written request of either party hereto to the other party hereto, but in no event less than six (6) months prior to the expiration of this Agreement, the parties hereto shall discuss the possible extension of or the renewal of the term of this Agreement, including the possible amendment of the provisions thereof.

5.6   The rights or privileges provided for in this Agreement may be assigned or transferred by either party only with the prior written consent of the other party and with the authorization or approval of any governmental authority as then may be required, except to a successor in ownership of all or substantially all of the assets of the assigning party. Such successor, before such assignment or transfer is effective, shall expressly assume in writing to the other party the performance of all of the terms and conditions of this Agreement to be performed by the assigning party.

## Section 6 - MISCELLANEOUS PROVISIONS

6.   Each of the parties hereto represents and warrants that it has the right to grant to or for the benefit of the other the immunity and rights granted hereunder in Sections 2 and 3.

6.2   Nothing contained in this Agreement shall be construed as:

> restricting the right of MOTOROLA or any of its SUBSIDIARIES to make, use, sell, lease or otherwise dispose of any particular product or products not herein licensed;

6.2.2    restricting the right of ASSEMBLY HOUSE or any of its SUBSIDIARIES to make, use, sell, lease or otherwise dispose of any particular product or products not herein licensed;

6.2.3    an admission by ASSEMBLY HOUSE of, or a warranty or representation by MOTOROLA as to, the validity and/or scope of the MOTOROLA PATENTS, or a limitation on ASSEMBLY HOUSE to contest, in any proceeding, the validity and/or scope thereof;

6.2.4    an admission by MOTOROLA of, or a warranty or representation by ASSEMBLY HOUSE as to, the validity and/or scope of the ASSEMBLY HOUSE PATENTS, or a limitation on MOTOROLA to contest, in any proceeding, the validity and/or scope thereof;

6.2.5    conferring any license or other right, by implication, estoppel or otherwise, under any patent application, patent or patent right, except as herein expressly granted under the MOTOROLA PATENTS, and the ASSEMBLY HOUSE PATENTS;

conferring any license or right with respect to any trademark, trade or brand name, a corporate name of either party or any of their respective SUBSIDIARIES, or any other name or mark, or contraction, abbreviation or simulation thereof;

6.2.7    imposing on MOTOROLA any obligation to institute any suit or action for infringement of any MOTOROLA PATENTS, or to defend any suit or action brought by a third party which challenges or concerns the validity of any MOTOROLA PATENTS;

imposing upon ASSEMBLY HOUSE any obligation to institute any suit or action for infringement of any ASSEMBLY HOUSE PATENTS, or to defend any suit or action brought by a third party which challenges or concerns the validity of any ASSEMBLY HOUSE PATENTS;

imposing on either party any obligation to file any patent application or to secure any patent or maintain any patent in force; or

6.2.10   an obligation on either party to furnish any manufacturing or technical information under this Agreement except as the same is specifically provided for herein.

6.3    No express or implied waiver by either of the parties to this Agreement of any breach of any term, condition or obligation of this Agreement by the other party shall be construed as a waiver of any subsequent breach of that term, condition or obligation or of any other term, condition or obligation of this Agreement of the same or of a different nature.

6.4    Anything contained in this Agreement to the contrary notwithstanding, the obligations of the parties hereto shall be subject to all laws, both present and future, of any Government having jurisdiction over either party hereto, and to orders or regulations of any such Government, or any department, agency, or court thereof, and acts of war, acts

of public enemies, strikes, or other labor disturbances, fires, floods, acts of God, or any causes of like or different kind beyond the control of the parties, and the parties hereto shall be excused from any failure to perform any obligation hereunder to the extent such failure is caused by any such law, order, regulation, or contingency but only so long as said law, order, regulation or contingency continues.

6.5   The captions used in this Agreement are for convenience only, and are not to be used in interpreting the obligations of the parties under this Agreement.

6.6   This Agreement and the performance of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Illinois.

6.7   If any term, clause, or provision of this Agreement shall be judged to be invalid, the validity of any other term, clause, or provision shall not be affected; and such invalid term, clause, or provision shall be deemed deleted from this Agreement.

6.8   This Agreement sets forth the entire Agreement and understanding between the parties as to the subject matter hereof and merges all prior discussions between them, and neither of the parties shall be bound by any conditions, definitions, warranties, understandings or representations with respect to such subject matter other than as expressly provided herein or as duly set forth on or subsequent to the date hereof in writing and signed by a proper and duly authorized officer or representative of the party to be bound thereby.

6.9   All notices required or permitted to be given hereunder shall be in writing and shall be valid and sufficient if dispatched by registered airmail, postage prepaid, in any post office in the United States, addressed as follows:

    6.9.1   If to MOTOROLA:

        Motorola Inc.
        1303 East Algonquin Road
        Schaumburg, Illinois 60196

        Attention:   Vice President for Patents, Trademarks & Licensing

    6.9.2   If to ASSEMBLY HOUSE:

        ChipMOS Technologies Inc.
        Tainan Assembly Plant
        No. 5, Nan-Ko Rd. 7
        Science-Based Industrial Park
        Tainan, Taiwan .R.O.C.

        Attention:   Manager, Assembly Technology Development Division

6.9.3   The date of receipt of such a notice shall be the date for the commencement of the running of the period provided for in such notice, or the date at which such notice takes effect, as the case may be.

OMPAC rev. 3.0                         Page 7

IN WITNESS WHEREOF, the parties hereto have executed this Agreement in duplicate.

MOTOROLA, INC.                                    CHIPMOS TECHNOLOGIES, INC.

William T. Edwards
Corp. V.P. and Director
SPS, Motorola, Inc.

Date: April 21, 1999

S.J. Cheng
President
ChipMOS Technology, Inc.

Date: MAR-09-99


Jon Meyer
Corporate Vice President
Assistant General Counsel & Director
Patents, Trademarks, and Licensing
Motorola, Inc.

Date: April 27 1999

**EXHIBIT B**

Amendment renewing the IMMUNITY AGREEMENT entered into April 1, 1999
between Motorola, Inc. and ChipMOS Technologies, Inc.

Motorola Inc. and ChipMOS Technologies, Inc. agree to amend the above-identified
IMMUNITY AGREEMENT as follows:

1. In Section 1.4, line 6, replace "integrated circuit device" with "INTEGRATED
   CIRCUIT STRUCTURE or STRUCTURES".

2. In Section 1.7, replace "the date of the last signature hereto." with "January 1,
   2003."

3. In Section 4.1, line 2, replace "2002" with "2010".

4. In Section 4.1.1, replace "$0.0007 (seven ten thousandths of a dollar) per pad
   until a royalty of $500,000 (five hundred thousand dollars) has been accrued."
   with "$0.00011 (eleven one hundred thousandths of a dollar) per pad."

5. Delete Section 4.1.2.

6. In Section 5.1, line 2, replace "2002" with "2010".

7. In Section 5.6, lines 3-7, remove ", except to a successor in ownership of all or
   substantially all of the assets of the assigning party. Such successor, before such
   assignment or transfer is effective, shall expressly assume in writing to the other
   party the performance of all of the terms and conditions of this Agreement to be
   performed by the assigning party".

8. Renumber Section "6.9" to "6.10".

9. Renumber Section "6.9.1" to "6.10.1".

10. Renumber Section "6.9.2" to "6.10.2".

11. Renumber Section "6.9.3" to "6.10.3".

12. After Section 6.8, add new Sections 6.9 and 6.9.1-6.9.6 as indicated below:

    6.9 The parties shall have the right to disclose the existence of this Agreement.
    The parties hereto, however, shall keep the terms of the Agreement confidential
    and shall not now or hereafter divulge any part thereof to any third party except:

        6.9.1 with the prior written consent of the other party; or

        6.9.2 to any governmental body having jurisdiction to request and to read the
        same; or

Amendment renewing the IMMUNITY AGREEMENT entered into April 1, 1999
between Motorola, Inc. and ChipMOS Technologies, Inc.

6.9.3 as otherwise may be required by law or legal processes; or

6.9.4 to legal counsel representing either party.

6.9.5 Notwithstanding the above, no disclosure of this Agreement shall be
made pursuant to Section 6.9.2 or 6.9.3 without the disclosing party first
giving the other party reasonable prior notice of such intended disclosure so as
to allow the other party sufficient time to seek a protective order or otherwise
assure the confidentiality of this Agreement as that other party shall deem
appropriate.

6.9.6 Notwithstanding anything to the contrary herein, the provisions of this
Section 6.9 shall survive termination of this Agreement and continue in
perpetuity.

All other terms and conditions of the above-identified IMMUNITY AGREEMENT
remain the same.

Indicating their agreement to the foregoing, the parties have hereto executed this
Agreement in duplicate.

Motorola, Inc.                              ChipMOS Technologies, Inc.

By: _____          By: _____

Title: DIRECTOR, IP LICENSING        Title: _____

Date: AUG. 19, 2003                  Date: _____

Page 2 of 2

# EXHIBIT B

**SUMMONS**
*(CITACION JUDICIAL)*

SUM-100

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

ChipMOS Technologies, Inc.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Freescale Semiconductor, Inc.

JUL 13 09

J. Cao-Nguyen

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| The name and address of the court is:<br>*(El nombre y dirección de la corte es):* Santa Clara County Superior Court<br>191 North First Street, San Jose, CA  95113 | CASE NUMBER:<br>*(Número del Caso):*<br>1 0 9 C V 1 4 7 2 2 5 |
|---|---|

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Greg L. Lippetz, JONES DAY, 1755 Embarcadero Road, Palo Alto, CA  94303

| DATE: July 13, 2009<br>*(Fecha)* | DAVID H. YAMASAKI<br>Executive Officer, Clerk | Clerk, by<br>*(Secretario)* J. Cao-Nguyen | , Deputy<br>*(Adjunto)* |
|---|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☑ on behalf of *(specify):* ChipMos Technologies, Inc.

   under: ☑ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)   ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)   ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov<br>American LegalNet, Inc.<br>www.FormsWorkflow.com |
|---|---|---|

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Greg L. Lippetz (SBN 154228)<br>JONES DAY<br>1755 Embarcadero Road<br>Palo Alto, CA 94303<br>TELEPHONE NO.: (650) 739-3939   FAX NO.: (650) 739-3900<br>ATTORNEY FOR *(Name):* | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Santa Clara
STREET ADDRESS: 191 North First Street
MAILING ADDRESS:
CITY AND ZIP CODE: San Jose, CA
BRANCH NAME:

JUL 13 09

J. Cao-Nguyen

CASE NAME:
Freescale Semiconductor, Inc. v. ChipMos Technologies, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| ✓ **Unlimited** (Amount demanded exceeds $25,000) | ☐ **Limited** (Amount demanded is $25,000 or less) | ☐ **Counter** ☐ **Joinder** Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | JUDGE:<br>DEPT: | **1 0 9 C V 1 4 7 2 2 5** |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

| **Auto Tort** | **Contract** | **Provisionally Complex Civil Litigation** (Cal. Rules of Court, rules 3.400–3.403) |
|---|---|---|
| ☐ Auto (22) | ✓ Breach of contract/warranty (06) | ☐ Antitrust/Trade regulation (03) |
| ☐ Uninsured motorist (46) | ☐ Rule 3.740 collections (09) | ☐ Construction defect (10) |
| **Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort** | ☐ Other collections (09) | ☐ Mass tort (40) |
| ☐ Asbestos (04) | ☐ Insurance coverage (18) | ☐ Securities litigation (28) |
| ☐ Product liability (24) | ☐ Other contract (37) | ☐ Environmental/Toxic tort (30) |
| ☐ Medical malpractice (45) | **Real Property** | ☐ Insurance coverage claims arising from the above listed provisionally complex case types (41) |
| ☐ Other PI/PD/WD (23) | ☐ Eminent domain/Inverse condemnation (14) | |
| **Non-PI/PD/WD (Other) Tort** | ☐ Wrongful eviction (33) | **Enforcement of Judgment** |
| ☐ Business tort/unfair business practice (07) | ☐ Other real property (26) | ☐ Enforcement of judgment (20) |
| ☐ Civil rights (08) | **Unlawful Detainer** | **Miscellaneous Civil Complaint** |
| ☐ Defamation (13) | ☐ Commercial (31) | ☐ RICO (27) |
| ☐ Fraud (16) | ☐ Residential (32) | ☐ Other complaint *(not specified above)* (42) |
| ☐ Intellectual property (19) | ☐ Drugs (38) | **Miscellaneous Civil Petition** |
| ☐ Professional negligence (25) | **Judicial Review** | ☐ Partnership and corporate governance (21) |
| ☐ Other non-PI/PD/WD tort (35) | ☐ Asset forfeiture (05) | ☐ Other petition *(not specified above)* (43) |
| **Employment** | ☐ Petition re: arbitration award (11) | |
| ☐ Wrongful termination (36) | ☐ Writ of mandate (02) | |
| ☐ Other employment (15) | ☐ Other judicial review (39) | |

2. This case ☐ is ✓ is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. ☐ Large number of separately represented parties   d. ☐ Large number of witnesses
   b. ☐ Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve   e. ☐ Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
   c. ☐ Substantial amount of documentary evidence   f. ☐ Substantial postjudgment judicial supervision
3. Remedies sought *(check all that apply):* a. ✓ monetary   b. ✓ nonmonetary; declaratory or injunctive relief   c. ✓ punitive
4. Number of causes of action *(specify):*
5. This case ☐ is ✓ is not   a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: July 13, 2009
GREG L. LIPPETZ
_____          _____
(TYPE OR PRINT NAME)                  (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
• Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
• File this cover sheet in addition to any cover sheet required by local court rule.
• If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
• Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
CM-010 [Rev. July 1, 2007]

**CIVIL CASE COVER SHEET**

Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;
Cal. Standards of Judicial Administration, std. 3.10
www.courtinfo.ca.gov
American LegalNet, Inc.
www.FormsWorkflow.com

**Russell, Patricia (Patty)**

| | |
|---|---|
| **From:** | ECF-CAND@cand.uscourts.gov |
| **Sent:** | Wednesday, August 12, 2009 2:07 PM |
| **To:** | efiling@cand.uscourts.gov |
| **Subject:** | Activity in Case 5:09-cv-03689-JF Freescale Semiconductor, Inc. v. Chipmos Technologies Inc Notice of Removal |

<span style="color:red">**This is an automatic e-mail message generated by the CM/ECF system. Please DO NOT RESPOND to this e-mail because the mail box is unattended.**</span>
**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* Judicial Conference of the United States policy permits attorneys of record and parties in a case (including pro se litigants) to receive one free electronic copy of all documents filed electronically, if receipt is required by law or directed by the filer. PACER access fees apply to all other users. To avoid later charges, download a copy of each document during this first viewing. However, if the referenced document is a transcript, the free copy and 30 page limit do not apply.**

U.S. District Court
Northern District of California
**Notice of Electronic Filing or Other Case Activity**

NOTE: Please read this entire notice before calling the Help Desk. If you have questions, please email the Help Desk by replying to this message; include your question or comment along with the original text.

Please note that these Notices are sent for all cases in the system when any case activity occurs, regardless of whether the case is designated for e-filing or not, or whether the activity is the filing of an electronic document or not.

If there are **two** hyperlinks below, the first will lead to the docket and the second will lead to an e-filed document.
*If there is no second hyperlink, there is no electronic document available .*
See the FAQ posting 'I have a Notice of Electronic Filing that was e-mailed to me but there's no hyperlink...' on the ECF home page at https://ecf.cand.uscourts.gov for more information.

The following transaction was received from entered on 8/12/2009 2:06 PM and filed on 8/12/2009
**Case Name:** Freescale Semiconductor, Inc. v. Chipmos Technologies Inc
**Case Number:** 5:09-cv-03689-JF
**Filer:** Chipmos Technologies Inc
**Document Number:** 1(No document attached)

**Docket Text:**
<span style="color:blue">**NOTICE OF REMOVAL from Superior Court of the State of CA, County of Santa Clara. Their case number is 109CV147225. (Filing fee $350.00 receipt number 54611005740). Filed byChipmos Technologies Inc. (gm, COURT STAFF) (Filed on 8/12/2009)**</span>

**5:09-cv-03689-JF Notice has been electronically mailed to:**

Gregory Louis Lippetz     glippetz@jonesday.com, lkeith@jonesday.com

Keren Hu     kerenhu@paulhastings.com, lynnematheny@paulhastings.com,
sariellovich@paulhastings.com

Ronald Scott Lemieux     ronaldlemieux@paulhastings.com, patriciarussell@paulhastings.com,
sariellovich@paulhastings.com

Shanee Y. W. Nelson     shaneenelson@paulhastings.com, patriciarussell@paulhastings.com,
sariellovich@paulhastings.com

**5:09-cv-03689-JF Please see General Order 45 Section IX C.2 and D; Notice has NOT been
electronically mailed to:**