Greg L. Lippetz (State Bar No. 154228)
glippetz@jonesday.com
JONES DAY
1755 Embarcadero Road
Palo Alto, CA 94303
Telephone: 650-739-3939
Facsimile: 650-739-3900

John R. Colgan (Admitted *Pro Hac Vice*)
jcolgan@jonesday.com
JONES DAY
77 W. Wacker
Chicago, IL 60601
Telephone: 312-782-3939
Facsimile: 312-782-8585

Attorneys for Plaintiff
FREESCALE SEMICONDUCTOR, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| Freescale Semiconductor, Inc.,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ChipMOS Technologies, Inc.,<br><br>　　　　　Defendant. | Case No. C-09-03689-JF-PVT<br><br>**FREESCALE SEMICONDUCTOR'S CORRECTED NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT RE: 1) CHIPMOS' CLAIMS FOR BREACH OF CONTRACT AND PATENT MISUSE, AND 2) FREESCALE'S CLAIM FOR BREACH OF CONTRACT**<br><br>*REDACTED PUBLIC VERSION LODGED PURSUANT TO L.R. 79-5(c)*<br><br>Date:　　July 2, 2010<br>Time:　　9:00 am<br>Dept:　　Courtroom 3, 5th Floor<br>Judge:　　Hon. Jeremy Fogel |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ..................................................................................................... 1

II. STATEMENT OF ISSUES TO BE DECIDED ....................................................... 2

III. UNDISPUTED FACTS ............................................................................................ 2

IV. ARGUMENT ............................................................................................................ 5

    A. Summary Judgment Standard ...................................................................... 5

    B. The Proper Interpretation of the Immunity Agreement Mandates Summary Judgment in Freescale's Favor ..................................................... 6

    C. Freescale is Entitled to Summary Judgment on ChipMOS' Counterclaims ........... 8

        1. Freescale Is Entitled To Summary Judgment On ChipMOS' Breach of Contract Counterclaim ................................................. 8

        2. Freescale is Entitled to Summary Judgment on ChipMOS' Patent Misuse Counterclaim ............................................................. 9

    D. Freescale is Entitled to Summary Judgment that ChipMOS Breached the Immunity Agreement ................................................................................ 11

        1. The Immunity Agreement is a Valid and Enforceable Contract ............... 12

        2. Freescale has Performed Under the Agreement ....................................... 12

        3. ChipMOS has breached the Immunity Agreement ................................... 13

        4. Freescale has Suffered Injury due to ChipMOS' Breach .......................... 13

V. CONCLUSION ....................................................................................................... 13

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Air Safety, Inc. v. Teachers Realty Corp.*,
706 N.E.2d 882 (Ill. 1999) ........................................................................................................ 6

*Asta, L.L.C. v. Telezygology, Inc.*,
629 F. Supp. 2d 837 (N.D. Ill. 2009) ........................................................................................ 8

*Automatic Radio Mfg. Co. v. Hazeltine Research*,
339 U.S. 827 (1950) ................................................................................................................ 10

*Bank of America Nat'l Trust and Sav. Ass'n v. Schulson*,
714 N.E.2d 20 (Ill. 1999) .......................................................................................................... 7

*Catania v. Local 4250/5050 of Commc'ns Workers of Am.*,
834 N.E.2d 966 (Ill. 2005) ................................................................................................. 8, 12

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................................. 5

*Central Illinois Light Co. v. Home Ins. Co.*,
821 N.E.2d 206 (Ill. 2004) .................................................................................................. 7, 8

*Lear, Inc. v. Adkins*,
395 U.S. 653 (1969) ................................................................................................................ 10

*Mallinckrodt, Inc. v. Medipart, Inc.*,
976 F.2d 700 (Fed. Cir. 1992) ................................................................................................ 11

*Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*,
475 U.S. 574 (1986) .................................................................................................................. 5

*Minebea Co. v. Papst*,
444 F. Supp. 2d 68 (D.D.C. 2006) .......................................................................................... 11

*Plastic Lens Co. v. Young Contact Lens Labs., Inc.*,
175 U.S.P.Q. 573 (D. Mass. 1972) ......................................................................................... 10

*Reich v. Reed Tool Co.*,
203 U.S.P.Q. 225 (Tex. App. 1979) ................................................................................... 9, 10

*Western Illinois Oil Co. v. Thompson*,
186 N.E.2d 285 (Ill. 1962) ........................................................................................................ 6

*Zenith Radio Corp. v. Hazeltine Research, Inc.*,
395 U.S. 100 (1969) ................................................................................................................ 10

**Statutes**

Federal Rules of Civil Procedure, Rule 56 ................................................................................ 1, 5

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on July 2, 2010, at 9:00 a.m., or as soon thereafter as the matter may be heard before the Court, located at 280 South 1st Street, San Jose, CA 95113 Courtroom 3 – 5th Floor, Plaintiff and Counterclaim-Defendant Freescale Semiconductor, Inc. ("Freescale"), pursuant to Fed. R. Civ. P. 56, will move the Court for Summary Judgment regarding (1) ChipMOS' claims for breach of contract and patent misuse, and (2) Freescale's Claim for Breach of Contract.

This motion is based on the Notice of Motion and Motion and the Memorandum of Points and Authorities incorporated herein, and on the declaration submitted in support of the Motion for Summary Judgment filed herewith.

**RELIEF REQUESTED**

Freescale seeks an order granting summary judgment in Freescale's favor regarding ChipMOS' claim for breach of contract.

Freescale seeks an order granting summary judgment in Freescale's favor regarding ChipMOS' claim for patent misuse.

Freescale seeks an order granting summary judgment in Freescale's favor regarding Freescale's claim for breach of contract.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.     INTRODUCTION**

Freescale Semiconductor, Inc. ("Freescale") filed suit for breach of contract against ChipMOS Technologies, Inc. ("ChipMOS") for failure to pay royalties pursuant to an Immunity Agreement ("Agreement") between the parties. The Agreement clearly and unambiguously requires ChipMOS to pay royalties to Freescale on sales[1] of "BGA packages," as that term is defined in the Agreement. It is undisputed that ChipMOS failed to pay royalties on its sales of certain "BGA packages" that ChipMOS refers to as "FBGA packages".

---

[1] The royalty provision in section 4.1 of the Agreement states that royalties are due on BGA packages made by ChipMOS and shipped and invoiced to customers, excluding those made for Freescale and excluding returns. For simplicity, Freescale describes these royalty bearing products as BGA packages "sold" by ChipMOS.

ChipMOS will be unable to present any admissible evidence to create a triable issue of material fact that would prevent Freescale from recovering these unpaid royalties. There is no evidence to support ChipMOS' contention that the Agreement only requires ChipMOS to pay royalties on sales of those BGA packages that practice at least one valid claim of Freescale's BGA-related patents. Even if such evidence existed, it would be inadmissible under applicable contract interpretation principles. ChipMOS is therefore left to argue that the Agreement is unenforceable. However, under the relevant law of patent misuse, ChipMOS will be unable to present evidence that would create a material issue of fact that Freescale committed patent misuse. Since there are no genuine issues of material fact with respect to the contract-related claims and defenses, Freescale is entitled to summary judgment.

## II. STATEMENT OF ISSUES TO BE DECIDED

1. Whether, under Illinois contract law, the Court should construe the Agreement between the parties to require ChipMOS to pay royalties on sales of all "BGA Packages," or only those BGA packages that infringe at least one valid claim of Freescale's BGA-related patents.

2. Was Freescale entitled to terminate the Agreement due to ChipMOS' failure to pay royalties on its FBGA packages, such that ChipMOS' breach of contract claim fails as a matter of law?

3. Will ChipMOS be unable to demonstrate a material issue of triable fact as to one or more required elements of its patent misuse counterclaim, thus entitling Freescale to summary judgment?

4. Because ChipMOS has no legally or factually supportable defenses, is Freescale entitled to Summary Judgment in its favor with respect to its breach of contract claim against ChipMOS?

## III. UNDISPUTED FACTS

On April 1, 1999, Motorola, Inc. and ChipMOS, executed an Immunity Agreement related to certain semiconductor packaging technology. *See* Declaration of Lee Chastain ("Chastain Decl.") ¶ 2. On January 1, 2003, the Agreement was amended primarily to reduce the royalty rate by two-thirds and to extend the term of the Agreement to December 31, 2010. Chastain Decl. ¶ 3,

1   4. In December 2004, Motorola spun off its semiconductor division and thereby formed

2   Freescale Semiconductor, Inc. Chastain Decl. ¶ 5. Subsequently, Freescale assumed Motorola's

3   rights and obligations under the Agreement. Chastain Decl. ¶ 5, Ex. C.

4   The Agreement generally relates to ball grid array ("BGA") package technology. Chastain

5   Decl. Ex. A. A ball grid array package, generally speaking, is a housing for an integrated circuit

6   device that utilizes an array of solder balls as a means of providing external electrical

7   interconnection for the integrated circuit. An example of a BGA package is shown in Figure 1.



Figure 1: Ball Grid Array package

The Agreement provides both Freescale and ChipMOS with immunity from suit from

certain of each others' patents related to BGA package technology. Chastain Decl. Ex. A, §3.

Freescale's grant of immunity from suit is set forth in Section 3:

> MOTOROLA hereby grants to ASSEMBLY HOUSE and its SUBSIDIARIES, for the term of this Agreement, immunity from suit under MOTOROLA PATENTS for making BGA PACKAGES, with or without solder balls or the like, for another and for ASSEMBLY HOUSE internal use. In no event shall the immunity from suit apply to MOTOROLA PATENTS which are infringed by the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs independent of being packaged in BGA PACKAGES.

ChipMOS granted a similar immunity from suit to Freescale. Chastain Decl. Ex. A, §3.2.

Additionally, ChipMOS agreed to pay to Freescale a royalty payment in accordance with Section

4 of the Agreement. Section 4.1 states:

> In partial consideration of the rights granted by MOTOROLA under Section 3, for the period beginning on the EFFECTIVE DATE and extending to December 31, 2010, ASSEMBLY HOUSE agrees to pay MOTOROLA a royalty based on the total number of pads on BGA PACKAGEs made by ASSEMBLY HOUSE and its SUBSIDIARIES, and shipped and invoiced to customers of ASSEMBLY HOUSE or its SUBSIDIARIES, excluding those made for MOTOROLA and excluding returns.

1     The royalty shall be $0.00011 (eleven one hundred thousandths of a dollar) per pad.

2 Chastain Decl. Exs. A and B, §4.1. The definition of BGA PACKAGE is found in section 1.4:

> BGA PACKAGE means a housing for an INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs in which the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs are mounted on one side of a substrate of a printed circuit board material or the like and are wire bonded to the substrate, plastic overlies the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs, and pads for receiving the solder balls or the like and providing electrical contacts to the integrated circuit device are mounted on the substrate on the side opposite to that on which the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs are mounted. Some BGA packages may have some pads which are not electrically connected to the INTEGRATED CIRCUIT STRUCTURE or STRUCTUREs.

Chastain Decl. Exs. A and B, §1.4.

    During the first six years of the Agreement, ChipMOS failed to pay to Motorola or Freescale a single royalty payment under the Agreement. Chastain Decl. ¶ 6. ChipMOS' first royalty statement under the Agreement was not submitted to Freescale until June 15, 2005, and this occurred only after Freescale made inquiries to ChipMOS regarding its non-payment. Chastain Decl. ¶ 7, 8. ChipMOS' initial royalty statement outlined the unpaid royalties for the first six years of the contract. Chastain Decl. ¶ 9. Freescale subsequently requested, and ChipMOS agreed to, an independent audit pursuant to section 4.5 of the Agreement to determine what outstanding royalties were still owed to Freescale. Chastain Decl. ¶ 10, 11. The audit was conducted between November 2005 and March 2006. Chastain Decl. ¶ 12.

    On March 27, 2006, the independent auditor provided a detailed report to Freescale and ChipMOS. Chastain Decl. ¶ 13, Ex. D. The auditor brought to Freescale's attention that ChipMOS had been selling a category of "BGA PACKAGEs," for which ChipMOS had paid no royalties. *Id.* ChipMOS referred to these BGA Packages as Fine Pitch Ball Grid Array ("FBGA") packages. *Id.*, Ex. D at §5.6. [REDACTED] The auditor determined that the unpaid royalties due for sales of FBGA packages between April 1, 1999, and December 1, 2005, were $642,007 plus interest. *Id.*, Ex. D at §5.7.

    Between September 2005 and June 2006, Freescale attempted to resolve the dispute regarding the unpaid royalties. Chastain Decl. ¶ 14. Freescale explained to ChipMOS, in writing

and in person, why ChipMOS was in breach of the Agreement and gave ChipMOS numerous opportunities to cure its breach. Chastain Decl. ¶ 15. However, ChipMOS continued to refuse to pay to Freescale the unpaid royalties. *Id*. On June 28, 2006, Freescale provided ChipMOS with written notice of the breach, pursuant to section 5.2 of the Agreement. Chastain Decl. ¶ 16. On October 16, 2006, after ChipMOS failed to pay the unpaid royalties within the time period specified in the Agreement, Freescale provided ChipMOS with a notice of termination. Chastain Decl. ¶ 17.

The Agreement provides that, even after termination, Freescale is entitled to collect royalties for all BGA Packages sold by ChipMOS. Chastain Decl., Ex. A and B, §5.4. Since the October 2006 termination, ChipMOS has continued to pay royalties for certain of its BGA packages into an escrow account. Chastain Decl. ¶ 18. These royalty payments have excluded royalties for FBGA packages. Chastain Decl. ¶ 19. Between October 2006 and July 2009, the parties continued to discuss possible resolution of the dispute, but were unsuccessful. Chastain Decl. ¶ 20. In July 2009, Freescale initiated this suit against ChipMOS for breach of the Immunity Agreement to recover the unpaid royalties for FBGA Packages. Chastain Decl. ¶ 21.

## IV. ARGUMENT

### A. Summary Judgment Standard

Summary judgment is appropriate where "there is no genuine issue as to any material fact and … the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file that establish the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324; *Matshushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

### B. The Proper Interpretation of the Immunity Agreement Mandates Summary Judgment in Freescale's Favor

As a preliminary matter, the Court can, and should, decide the proper scope of ChipMOS' obligations under the Agreement. The central dispute between the parties is whether the Agreement requires ChipMOS to pay royalties on sales of all "BGA Packages," or only those BGA packages that infringe at least one valid claim of Freescale's BGA-related patents. If this issue is resolved in Freescale's favor, Freescale is entitled to summary judgment on its breach of contract claim, and on ChipMOS' counterclaims.

The Court can decide the scope of ChipMOS' obligations under the Agreement as a matter of law. The Agreement states that "[t]his Agreement and the performance of the parties hereunder shall be construed in accordance with and governed by the laws of the State of Illinois." *See* Chastain Decl., Ex. A §6.6. Illinois law directs courts to interpret a contract according to the language used in the contract, and states explicitly that the language of the agreement is not to be changed by extrinsic evidence. *See Air Safety, Inc. v. Teachers Realty Corp.*, 706 N.E.2d 882, 884 (Ill. 1999) (quoting *Western Illinois Oil Co. v. Thompson*, 186 N.E.2d 285, 287 (Ill. 1962) ("[a]n agreement, when reduced to writing, must be presumed to speak the intention of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used. It is not to be changed by extrinsic evidence.")). Only in cases where the language in a contract is found to be ambiguous should a court consider extrinsic evidence. *Air Safety*, 706 N.E.2d at 884. The direction to ignore extrinsic evidence is particularly strong when the contract contains an integration clause. *Id.* at 886 ("An integration clause […] is a clear indication that the parties desire the contract to be interpreted solely according to the language used in the final agreement.").

The Agreement should be interpreted to require ChipMOS to pay royalties on any product that meets the definition of "BGA PACKAGE." The Immunity Agreement between Freescale and ChipMOS is unambiguous. The Agreement specifies the royalty payments owed to Freescale in Section 4.1:

> In partial consideration of the rights granted by MOTOROLA under Section 3, for the period beginning on the EFFECTIVE DATE and extending to December 31, 2010,

> ASSEMBLY HOUSE agrees to pay MOTOROLA a royalty based on the total number of pads on BGA PACKAGEs made by ASSEMBLY HOUSE and its SUBSIDIARIES, and shipped and invoiced to customers of ASSEMBLY HOUSE or its SUBSIDIARIES, excluding those made for MOTOROLA and excluding returns.
>
> The royalty shall be $0.00011 (eleven one hundred thousandths of a dollar) per pad.

Chastain Decl., Exs. A and B, §4.1. The plain language of the Agreement requires ChipMOS to pay royalties to Freescale "based on the total number of pads on BGA PACKAGEs." Therefore, if ChipMOS sells a product that is a BGA PACKAGE, a term defined in section 1.4, then royalties are owed to Freescale. The Agreement does not contain any additional requirement that the BGA PACKAGE must also infringe a valid claim of a Freescale patent.

ChipMOS cannot create a disputed issue of fact from the language in the Immunity Agreement. ChipMOS' sole argument regarding the language in the Agreement can be found in its Opposition to Freescale's Motion to Dismiss ("Opposition") at 10:11-13, where it cites to Sections 2.1, 3.1 and 4.1 of the Agreement for the proposition that the Agreement requires royalties only for products that infringe a Freescale patent. However, Sections 2.1 and 3.1 define the scope of ChipMOS' immunity from prosecution, not the scope of products subject to royalties. Section 4.1 contains no language that would support ChipMOS' interpretation. As a result, the unambiguous language in the Agreement can and should be interpreted by the Court to require ChipMOS to pay royalties on all products that meet the definition of "BGA PACKAGEs."

There is no justification to allow extrinsic evidence to be considered. Because ChipMOS' interpretation is not supported by the unambiguous language of the Agreement, ChipMOS would have to present admissible extrinsic evidence to create a material issue of fact regarding the interpretation of the Agreement. However, even if such evidence exists, there is no basis to admit any such evidence. First, the Agreement is unambiguous. Under Illinois law, whether a contract is ambiguous is a question of law. *Bank of America Nat'l Trust and Sav. Ass'n v. Schulson*, 714 N.E.2d 20, 24 (Ill. 1999). A contract is ambiguous only if the words are reasonably susceptible to more than one meaning or if the language of the contract is "obscure in meaning through indefiniteness of expression." *Central Illinois Light Co. v. Home Ins. Co.*, 821 N.E.2d 206, 213 (Ill. 2004). The mere fact that Freescale and ChipMOS disagree on the interpretation of the

1    Agreement does not render the Agreement ambiguous. *Id*. at 214 ("[A] contract is not rendered
2    ambiguous merely because the parties disagree on its meaning."); s*ee also*, *id*. ("A contract is not
3    necessarily ambiguous when . . . each party insists that the language unambiguously supports its
4    position."); s*ee also*, *Asta, L.L.C. v. Telezygology, Inc.*, 629 F. Supp. 2d 837, 846 (N.D. Ill. 2009).
5    Additionally, the Agreement has an integration clause, which further prevents introduction of any
6    extrinsic evidence. Under these circumstances, there is no basis to consider extrinsic evidence in
7    deciding the correct interpretation of the Agreement.

8    Therefore, since Freescale's contract interpretation is the only interpretation consistent
9    with the unambiguous language of the Agreement, and ChipMOS' interpretation would require
10   consideration of inadmissible extrinsic evidence, the Court should interpret the Agreement to
11   require royalty payments on any product that meets the definition of a "BGA PACKAGE."

      **C.     Freescale is Entitled to Summary Judgment on ChipMOS' Counterclaims**

           **1.     Freescale Is Entitled To Summary Judgment On ChipMOS' Breach of Contract Counterclaim**

15   ChipMOS alleges that Freescale breached the Agreement when it terminated the
16   Agreement for ChipMOS' failure to pay royalties. *See* ChipMOS Answer ¶53-57. Under Illinois
17   law, in order to establish a claim for breach of contract, a plaintiff must allege and prove the
18   following elements: "(1) the existence of a valid and enforceable contract; (2) performance by the
19   plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff."
20   *Catania v. Local 4250/5050 of Commc'ns Workers of Am.*, 834 N.E.2d 966, 971 (Ill. 2005). As
21   to the first element, Freescale admits that the Agreement is a valid and enforceable contract.
22   However, ChipMOS will be unable, as a matter of law, to prove any of the remaining elements of
23   its claim.

24   If the Court determines that ChipMOS was obligated to pay to Freescale royalties for any
25   product that meets the definition of BGA PACKAGE under the Agreement, ChipMOS cannot
26   prove the second or third elements of its claim. ChipMOS cannot prove that it performed its
27   obligations under the Agreement because it is undisputed that ChipMOS failed to pay royalties on
28   one category of products that meet the definition of BGA PACKAGE, FBGAs. ChipMOS cannot

1  prove that Freescale breached the Agreement because it is undisputed that Freescale was entitled
2  to terminate the Agreement upon ChipMOS' failure to pay royalties owed under the Agreement.
3       Even if ChipMOS were able to present a material issue of fact as to all of the first three
4  elements of its claim for breach of contract, it will be unable to prove that it suffered any
5  damages. Freescale has not sued ChipMOS for patent infringement, so ChipMOS has suffered no
6  injury as a result of the termination. ChipMOS has not presented, and cannot present, any
7  evidence of recoverable damages that flow from Freescale's termination of the Agreement. As a
8  result, ChipMOS is unable to prove an additional and necessary element of its claim for breach of
9  contract, further entitling Freescale to a grant of summary judgment.

### 2. Freescale is Entitled to Summary Judgment on ChipMOS' Patent Misuse Counterclaim

ChipMOS has advanced two theories that allegedly justify its patent misuse claim. ChipMOS Answer ¶52. The first theory is that Freescale engaged in anticompetitive conduct by attempting to extend patent rights over products that are not covered by such patents. *Id*. *See also* Opposition at 9 ("[U]nless ChipMOS' FBGA products infringe a valid claim of the Freescale patents, Freescale's demand for payment of royalties based on the manufacture or sale of ChipMOS' FBGA products is a misuse of the patent grant and unenforceable as a matter of law.") In the alternative, ChipMOS argues that if its products are covered by the patents, Freescale has engaged in anticompetitive conduct by attempting to extend patent rights over products that have been licensed by customers of ChipMOS. *Id*. ChipMOS will be unable to provide either the legal or factual justification to defeat summary judgment on either of its "patent misuse" theories.

The use of a royalty provision that requires payment of royalties for products beyond those that practice certain patents does not, as a matter of law, constitute patent misuse. The case law is clear that the use of a royalty provision, such as the one used in the Agreement, does not constitute patent misuse *per se*. *Reich v. Reed Tool Co.*, 203 U.S.P.Q. 225, 228-29 (Tex. App. 1979) ("In the case of a patent license, it is not per se a misuse to measure the consideration by a percentage of the licensee's total sales including sales of products not within the patent."). In fact, the Supreme Court has upheld a similar royalty provision, finding that it was the result of

1 sound business judgment and was included for the convenience of the parties. *See Automatic*
2 *Radio Mfg. Co. v. Hazeltine Research*, 339 U.S. 827, 834 (1950) (holding enforceable a royalty
3 provision that requires a licensee to pay royalties based on its sales, even though none of the
4 patents are used), *overruled on other grounds*, *Lear, Inc. v. Adkins*, 395 U.S. 653 (1969).
5 Therefore, there is nothing inherently improper or *per se* illegal in requiring royalty payments
6 based on sales of products that do not necessarily practice the patents that are the subject of the
7 agreement.

8 Instead, under the case law, ChipMOS is required to present evidence that it was coerced
9 to accept the royalty provision in order to support a claim for patent misuse. *See Zenith Radio*
10 *Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 139 (1969); *see also Plastic Lens Co. v. Young*
11 *Contact Lens Labs., Inc.*, 175 U.S.P.Q. 573, 574 (D. Mass. 1972) ("[T]he defendants are required
12 to introduce evidence of coercion or conditioning – a posture on the part of the plaintiff which
13 rejected alternative proposals by the defendants – in order to establish patent misuse."). To
14 determine whether there has been coercion, the Court should focus on the negotiations between
15 the parties before entering the agreement. *See Reich*, 203 U.S.P.Q. at 229. ("[T]he negotiations
16 leading up to the contract are relevant to determine whether improper conditioning has
17 occurred.")

18 Here, ChipMOS' patent misuse claim fails because it cannot present evidence of coercion
19 or conditioning. To date, ChipMOS has denied that the Agreement even contains a royalty
20 provision that requires ChipMOS to pay royalties on products that might not be covered by a
21 valid Freescale patent. ChipMOS cannot argue, on one hand, that such a royalty provision
22 doesn't exist and then argue, on the other hand, that it was "coerced" into accepting such a royalty
23 provision. The way in which ChipMOS has structured its claim, it will be impossible for
24 ChipMOS to present any evidence of the coercion necessary to defeat summary judgment. Since
25 there is no evidence of coercion, ChipMOS will be unable to defeat summary judgment as to its
26 first theory of patent misuse.

27 ChipMOS' second theory of patent misuse is also fatally flawed. First, so long as
28 Freescale's interpretation of the Agreement is correct, ChipMOS' obligation to pay royalties is

not dependent in any way on whether or not Freescale could legitimately assert one or more of its patents against ChipMOS. ChipMOS is paying for peace of mind, and entered into an agreement that would ensure that Freescale did not sue ChipMOS. The benefit of the bargain was freedom from suits, without regard to whether or not such claims would or would not be valid.

Second, ChipMOS is essentially alleging that Freescale is attempting to collect double royalties. An allegation of patent misuse on the basis of double royalties must be evaluated under the rule of reason, and will be unlawful only if, *inter alia*, it causes actual harm to competition. To establish patent misuse on the basis of alleged double collection of royalties, ChipMOS must prove that (1) Freescale has collected royalties more than once for the same set of patent rights, applying to the same product, from both ChipMOS and ChipMOS' customers; (2) the practice acted to extend the scope of the patent grant; (3) the practice had anticompetitive effect, and (4) the practice is not outweighed by its pro-competitive benefits. *Mallinckrodt, Inc. v. Medipart, Inc.*, 976 F.2d 700, 708 (Fed. Cir. 1992); *see also Minebea Co. v. Papst*, 444 F. Supp. 2d 68, 210-13, 215-16, 219-20 (D.D.C. 2006). To prove the first element, ChipMOS would need to prove that 100% of its customers are licensed to 100% of Freescale's BGA Patents. ChipMOS will be unable to do so. At most, if ChipMOS were able to prove that some of its customers are licensed to some or all of Freescale's BGA Patents, such evidence might arguably be relevant to the damages analysis. For the remaining elements of ChipMOS' claim, ChipMOS faces the high hurdle of presenting admissible evidence of antitrust-type evidence. To date, ChipMOS has come forward with no such evidence, and there is no reason to believe that any such evidence exists. As a result, ChipMOS will be unable to present the necessary evidence to defeat summary judgment on liability for its second theory of patent misuse. Therefore, Freescale is entitled to summary judgment on ChipMOS' patent misuse claim.

### D. Freescale is Entitled to Summary Judgment that ChipMOS Breached the Immunity Agreement

ChipMOS is unable to present a disputed issue of material fact that would prevent the Court from finding, as a matter of law, that ChipMOS breached the immunity agreement by failing to pay royalties owed under the agreement.

Under Illinois law, in order to establish a claim for breach of contract, a plaintiff must allege and prove the following elements: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Catania*, 834 N.E.2d at 971. There exist no genuine issues of material fact with respect to these elements that would prevent the Court from granting summary judgment for Freescale.

### 1. The Immunity Agreement is a Valid and Enforceable Contract

There is no dispute that the parties legally executed the Immunity Agreement, and that a contract was formed between the parties. As discussed above, ChipMOS has asserted, as a matter of law, that the Immunity Agreement is unenforceable because Freescale's interpretation of the Immunity Agreement would constitute patent misuse. There are two reasons why ChipMOS' assertion does not bar summary judgment. First, "ChipMOS admits that the Immunity Agreement is valid and enforceable to the extent that the claims of the MOTOROLA PATENTS defined therein are valid and enforceable and cover any ChipMOS BGA products." ChipMOS Answer ¶24. ChipMOS cannot dispute that there exist claims of the MOTOROLA PATENTS that cover at least one ChipMOS BGA product because ChipMOS continues to pay royalties to Freescale for BGA packages that ChipMOS believes are arguably covered by the MOTOROLA PATENTS. *See* Opposition at 3:10-12 ("As Freescale concedes, ChipMOS has diligently paid royalties to Freescale for BGA packages that ChipMOS believes are arguably covered by the Freescale Patents.") Therefore, ChipMOS concedes that there exists a valid and enforceable agreement between the parties. Second, as discussed above, ChipMOS' patent misuse claim fails as a matter of law.

### 2. Freescale has Performed Under the Agreement

It is undisputed that Freescale has performed its primary obligations under the agreement. Freescale was obligated to provide ChipMOS with immunity from suit under the MOTOROLA PATENTS. There is no dispute that Freescale complied with this obligation. ChipMOS' sole basis to contest Freescale's performance is its claim that Freescale "breached the Immunity Agreement by purporting to terminate the Immunity Agreement based on false claims that it is

1  entitled to royalties under the Motorola patents." However, if the Court determines that Freescale
2  was entitled to royalty payments for FBGA packages, Freescale's termination was lawful, and
3  Freescale will have performed all of its obligations under the Agreement.

### 3. ChipMOS has breached the Immunity Agreement

Under the proper interpretation of the Agreement, ChipMOS was required to pay to Freescale royalties on sales of all "BGA PACKAGES". It is undisputed that ChipMOS failed to pay to Freescale royalties on sales of one category of BGA PACKAGES, its FBGA packages. Therefore, because ChipMOS was required to pay royalties on sales of its FBGA packages and failed to do so, it breached the Agreement.

### 4. Freescale has Suffered Injury due to ChipMOS' Breach

There is no dispute that Freescale has suffered injury, in the form of unpaid royalties, as a result of ChipMOS' refusal to pay to Freescale royalties on sales of its FBGA packages. Therefore, Freescale can prove, as a matter of law, every element of its claim for breach of contract, entitling Freescale to summary judgment on its claim.

## V. CONCLUSION

The Court can resolve this case without requiring the parties to engage in discovery. The issues of breach of contract and patent misuse can be decided, and should be decided on summary judgment. First, the Court should grant summary judgment in Freescale's favor on ChipMOS' counterclaims of breach of contract and patent misuse. Second, the Court should grant summary judgment in Freescale's favor on Freescale's breach of contract claim. Granting Freescale's requested relief will resolve this entire litigation without any further expenditure of time or resources.

Dated: May 14, 2010

Respectfully submitted,

Jones Day

By: /s/ Greg L. Lippetz
    Greg L. Lippetz

Counsel for Plaintiff
FREESCALE SEMICONDUCTOR, INC.