**E-Filed 9/8/2011**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FREESCALE SEMICONDUCTOR, INC., <br><br>   Plaintiff, <br><br>   v. <br><br> CHIPMOS TECHNOLOGIES, INC., <br><br>   Defendant, <br> _____ <br> AND RELATED COUNTERCLAIMS. | Case No. 5:09-cv-3689-JF <br><br> ORDER[1] (1) GRANTING FREESCALE'S MOTION FOR PARTIAL SUMMARY JUDGMENT; AND (2) DENYING CHIPMOS'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT <br><br> [re: dkt. entries 82, 100] |

Plaintiff/Counterdefendant Freescale Semiconductor, Inc. ("Freescale") seeks partial summary judgment with respect to its contract claim as well as the patent misuse counterclaim asserted by Defendant/Counterclaimant ChipMOS Technology, Inc. ("ChipMOS"). ChipMOS opposes the motion and seeks partial summary judgment with respect to Freescale's contract claim and with respect to a number of its counterclaims.

---

[1] This disposition is not designated for publication and may not be cited.

Case No.  5:09-cv-3689-JF
ORDER (1) GRANTING FREESCALE'S MOTION FOR PARTIAL SUMMARY JUDGMENT ETC.
 (JFLC2)

## I. BACKGROUND

The facts underlying this lawsuit are well-known to the parties and need not be recited in full here. The parties' dispute arises out of an Immunity Agreement ("the Agreement") entered into by ChipMOS and Freescale's predecessor-in-interest, Motorola, Inc. ("Motorola"). In essence, the Agreement cross-licenses patents covering ball grid array ("BGA") package technology, as it provides that each party is immune from suit for infringement of the other's patents relating to BGA packages. The Agreement requires ChipMOS to make royalty payments with respect to certain BGA packages that it makes and ships during a calendar quarter. Motorola assigned its rights and obligations under the Agreement to Freescale. In March 2006, an independent audit led Freescale to believe that ChipMOS owed royalty payments under the Agreement. Freescale notified ChipMOS that it considered failure to pay to be a material breach of the Agreement. ChipMOS failed to make payment within forty-five days, and Freescale exercised its right to terminate the Agreement. Freescale then filed the instant action in the Santa Clara Superior Court, asserting a claim for breach of contract. On August 12, 2009, ChipMOS removed the action to this Court on the basis of diversity of citizenship, and it also filed counterclaims for breach of contract and for a judicial declaration that certain of Freescale's patents are invalid and not infringed by ChipMOS's products.

On April 22, 2010, this Court stayed the litigation with respect to patent-related issues pending disposition of certain contract-related issues. On August 3, 2010, the Court granted partial summary judgment for Freescale with respect to ChipMOS's counterclaim for breach of contract. The Court concluded as follows: the Agreement provides for a "total-sales royalty," i.e., a royalty based on the total sales of ChipMOS's BGA packages, irrespective of whether the specific BGA packages are covered by any patent; ChipMOS's products fall within the scope of the Agreement; ChipMOS failed to make royalty payments; and thus ChipMOS cannot establish its own performance under the Agreement, a necessary element of its contract claim. With respect to Freescale's contract claim, the Court concluded that Freescale had established its own performance, breach by ChipMOS, and resulting injury. The only unresolved question was the validity of the Agreement in light of ChipMOS's counterclaim of patent misuse; the Court

concluded that ChipMOS was entitled to take additional discovery with respect to these issues.

Freescale now renews its motion for partial summary judgment, seeking an adjudication that the Agreement is valid and enforceable and that ChipMOS's patent misuse counterclaim is without merit. ChipMOS has filed a cross-motion for summary judgment, seeking an adjudication that the Agreement is invalid and unenforceable as a result of Freescale's patent misuse, and specifically, Freescale's alleged "conditioning" of licenses upon royalty payments for products not covered by its patents. ChipMOS also seeks judgment based upon its defense of patent exhaustion.

## II. LEGAL STANDARD

The standard applied to a motion seeking partial summary judgment is identical to the standard applied to a motion seeking summary judgment with respect to the entire case. *See Urantia Foundation v. Maaherra*, 895 F. Supp. 1335, 1335 (D. Ariz. 1995). A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party bears the initial burden of informing the Court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this initial burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324. A genuine issue for trial exists if the non-moving party presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. *Anderson*, 477 U.S. 242, 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

**A.    "Conditioning"**

"A patentee has the exclusive right to manufacture, use, and sell his invention." *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 135 (1969). "But there are established

3

limits which the patentee must not exceed in employing the leverage of his patent to control or limit the operations of [a] licensee." *Id*. at 136. "[T]he patent's leverage may not be used to extract from the licensee a commitment to purchase, use, or sell other products according to the desires of the patentee." *Id*. "[N]either can that leverage be used to garner as royalties a percentage share of the licensee's receipts from sales of other products; in either case, the patentee seeks to extend the monopoly of his patent to derive a benefit not attributable to use of the patent's teachings." *Id*. "[C]onditioning the grant of a patent license upon payment of royalties on products which do not use the teaching of the patent does amount to patent misuse." *Id*. at 135.

However, a situation easily might arise in which "the licensee as well as the patentee would find it more convenient and efficient from several standpoints to base royalties on total sales than to face the burden of figuring royalties based on actual use." *Zenith Radio*, 395 U.S. at 138. "If convenience of the parties rather than patent power dictates the total-sales royalty provision, there are no misuse of the patents and no forbidden conditions attached to the license." *Id*.

ChipMOS claims that Freescale conditioned the Agreement upon ChipMOS's payment of royalties on BGA packages that do not use the teaching of the subject patents ("Motorola patents"). However, ChipMOS concedes that it did not raise the implications of the total-sales royalty provision during negotiation of the Agreement. ChipMOS has not presented any evidence that Motorola misrepresented the royalty provision or that ChipMOS resisted the provision or suggested alternatives that Motorola refused. Rather, ChipMOS's theory is that Motorola had such a firm, non-negotiable policy of requiring a total-sales royalty provision that the policy amounted to the unacceptable coercion described in *Zenith Radio*. ChipMOS offers evidence that Motorola used a form of the total-sales royalty agreement at issue in this case as its "standard agreement" with all assembly houses. ChipMOS claims that its evidence establishes that the total-sales royalty was the *only* way to obtain a license or immunity agreement from Motorola, and that numerous licensees attempted to negotiate this provision but Motorola refused to deal.

After examining carefully all of the deposition transcripts and other evidence offered by ChipMOS, the Court concludes ChipMOS's showing is insufficient to raise a genuine issue of material fact. While it does appear that Motorola used a form of the Agreement as its "standard" agreement, and that some assembly houses pushed back on *other* aspects of the Agreement, the record is devoid of evidence from which a trier of fact could conclude that any of the assembly houses asked Motorola to replace the total-sales royalty provision with one based upon only patented products. There is no evidence that Motorola rode roughshod over the desires of the assembly houses by insisting on a percentage-of-sales royalty, regardless of use, or by rejecting proposals to pay only for actual use.

**B.      Patent Exhaustion**

"The longstanding doctrine of patent exhaustion provides that the initial authorized sale of a patented item terminates all patent rights to that item." *Quanta Computer, Inc. v. LG Electronics, Inc.*, 553 U.S. 617, 625 (2008). Thus a patentee's attempts to collect royalties from two different parties on the same products violates the exhaustion doctrine. *See PSC Inc. v. Symbol Technologies, Inc.*, 26 F. Supp. 2d 505, 510 (W.D.N.Y. 1998).

ChipMOS argued initially that it was asked to pay royalties on products that it assembled for Micron, which also had a license with respect to the Motorola patents and was asked to pay royalties on the same products. ChipMOS now argues that in June 2005, Motorola entered into a settlement agreement with Micron under which the parties granted to each other royalty-free, fully-paid, non-exclusive, worldwide licenses under the patents in question. If this is true, Freescale is not collecting "double" royalties, because it is not collecting royalties from Micron at all. ChipMOS nonetheless argues that under these circumstances its exhaustion defense precludes Freescale from recovering royalties on products that ChipMOS assembled for Micron.

The Court concludes that ChipMOS has failed to demonstrate that the Micron settlement agreement covers the same patents as those at issue in this case. Moreover, ChipMOS waived this defense by failing to raise it in response to Freescale's earlier motion for summary judgment. *See Pandrol USA, LP v. Airboss Ry. Products, Inc.*, 320 F.3d 1354, 1367 (Fed. Cir. 2003) (holding that defendant in patent suit waived a defense by failing to raise it in opposition to

plaintiff's motion for summary judgment).[2]

### IV. ORDER

(1) Freescale's motion for partial summary judgment is GRANTED with respect to its contract claim and ChipMOS's patent misuse counterclaim; and

(2) ChipMOS's motion for partial summary judgment is DENIED.

DATED: 9/8/2011

_____
JEREMY FOGEL
United States District Judge

---

[2] The Court notes that even if ChipMOS were to prevail on its exhaustion defense, at most Freescale's contract damages would be reduced – Freescale still would prevail on its breach of contract claim.